## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **TAMMY LYNN KEEN,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:08cv00018 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant. | ) | UNITED STATES MAGISTRATE JUDGE |

### I.  Background and Standard of Review

The plaintiff, Tammy Lynn Keen, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was no longer eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2008). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B).  As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more

Case 1:08-cv-00018-JPJ-PMS   Document 19   Filed 03/12/09   Page 1 of 17   Pageid#: 656

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Keen protectively filed her application for DIB on February 4, 2004, alleging disability as of January 2, 2004, due to bipolar disorder, hypothyroidism, arthritis and depression. (Record, ("R."), at 60-63, 80, 115.) The claim was denied initially and upon reconsideration. (R. at 33-35, 40, 41-43.) Keen then requested a hearing before an administrative law judge, ("ALJ"). (R. at 46.) The ALJ held a hearing on March 15, 2006, at which Keen was represented by counsel. (R. at 512-59.)

By decision dated May 15, 2006, the ALJ found that Keen had been disabled from January 2, 2004, through October 10, 2005, and had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 18-30.) The ALJ found that, as of October 11, 2005, Keen was no longer disabled. (R. at 25, 30.) The ALJ found that Keen met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2008. (R. at 22.) The ALJ found that the medical evidence established that Keen suffered from severe impairments, namely degenerative disc disease, degenerative joint disease of the back and an affective disorder, but he found that Keen did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.) The ALJ found that, as of October 11, 2005, Keen had the

-2-

residual functional capacity to perform a limited range of light[1] work, which required no more than occasional crouching and stooping, frequent climbing, balancing, kneeling and crawling and that allowed for a moderate reduction in concentration. (R. at 28.) Therefore, the ALJ found that, beginning October 11, 2005, Keen was unable to perform any of her past relevant work. (R. at 29.) Based on Keen's age, education, work history and residual functional capacity as of October 11, 2005, and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Keen could perform, including jobs as a security guard, a maid and a housekeeper. (R. at 29.) Thus, the ALJ found that, as of October 11, 2005, Keen was not under a disability as defined under the Act and was not eligible for benefits. (R. at 30.) *See* 20 C.F.R. § 404.1520(g) (2008).

After the ALJ issued his decision, Keen pursued her administrative appeals, (R. at 14), but the Appeals Council denied her request for review. (R. at 7-11.) Keen then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2008). This case is before the court on the Commissioner's motion for summary judgment filed December 29, 2008.[2]

## II. Facts

Keen was born in 1967, which classifies her as a "younger person" under 20

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2008).

[2]Keen has not filed a motion for summary judgment.

-3-

C.F.R. § 404.1563(c). (R. at 61, 518.)  She has a high school education, two years of college education and special training in respiratory therapy.  (R. at 86.) Keen has past relevant work experience as a respiratory therapist. (R. at 81, 86, 89.)

Keen testified that she was unable to work because of anxiety and panic attacks. (R. at 527.) She stated that she could stand for up to 30 minutes without interruption. (R. at 527.) Keen stated that she could walk for up to 30 minutes without interruption and sit for less than two hours without interruption.  (R. at 528.)  She stated that she experienced auditory and visual hallucinations.  (R. at 547.)

Annmarie Cash, a vocational expert, also was present and testified at Keen's hearing. (R. at 550-57.) Cash classified Keen's past work as a respiratory therapist as medium[3] and skilled. (R. at 551.) Cash was asked to consider a hypothetical individual of Keen's age, education and work history, who was limited as indicated in the assessment completed by state agency physician, Dr. Frank M. Johnson, M.D.  (R. at 227-34, 551-52.) Cash testified that such an individual could perform a full scale of unskilled or semiskilled, light work. (R. at 552.) Cash testified that a significant number of jobs existed in the economy that such an individual could perform, including jobs as a security guard, a maid and a housekeeper.  (R. at 552-53.) Cash also was asked to consider an individual who was moderately limited in her mental abilities to perform work-related activities.  (R. at 553-54.)  Cash stated that the individual could perform the jobs previously mentioned.  (R. at 554.) Cash was asked if there would be jobs available that an individual could perform if she was limited as

---

[3]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2008).

indicated in the assessment of Dr. Alfredo Cervantes, M.D. (R. at 257-59, 555-56.) Cash stated that there would be no jobs available that such an individual could perform. (R. at 556.) Cash also stated that if the limitations as indicated by psychologist L. Andrew Steward were considered, there would be no jobs available. (R. at 374-76, 556-57.)

In rendering his decision, the ALJ reviewed medical records from Family Care Center; Caroline Thompson Schleifer, a licensed professional counselor; Russell County Medical Center; Joseph Leizer, Ph.D., a state agency psychologist; Dr. Robert O. McGuffin, M.D., a state agency physician; Dr. Frank M. Johnson, M.D., a state agency physician; E. Hugh Tenison, Ph.D., a state agency psychologist; Life Recovery; Dr. Robert Saunders, M.D.; Johnston Memorial Hospital; Dr. Minaben D. Patel, M.D.; Dr. Alfredo Cervantes, M.D.; Appalachian Center for Obesity Surgery; Merritt Physical Therapy and Rehabilitation Inc., P.C.; L. Andrew Steward, Ph.D., a licensed clinical psychologist; Donna L. Havens, L.C.S.W., a licensed clinical social worker; and Dr. Joseph Ascue, M.D. Keen's attorney also submitted medical records from Dr. Timothy M. Fullagar, M.D.; Dr. Micahel J. Hodge, M.D.; Dr. David Beaird, M.D.; Appalachian Psychiatric Associates; Buchanan General Hospital; Russell County Medical Center; and The Counseling Center to the Appeals Council.[4]

The record shows that Keen has a history of treatment for a variety of medical conditions, including bipolar disorder, since her alleged date of disability, January 2,

_____

[4]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 7-11), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Case 1:08-cv-00018-JPJ-PMS   Document 19   Filed 03/12/09   Page 5 of 17   Pageid#: 660

2004. (R. at 61, 132, 136-40.) Because the ALJ found that Keen was disabled for a closed period from January 2, 2004, through October 10, 2005, the court will set forth only that medical evidence which pertains to the relevant time period of Keen's claim on appeal. The relevant time period is from October 11, 2005, the date the ALJ determined that Keen attained medical improvement, to the date of the ALJ's decision on May 15, 2006.

The medical evidence, as of October 11, 2005, shows that Keen continued to receive mental health treatment at The Counseling Center, where she had undergone weekly therapy sessions since February 2004. (R. at 150-66, 279-300, 389-90, 409-15.) Caroline Thompson Schleifer, a licensed professional counselor and Keen's therapist, documented Keen's complaints of depression and of difficulty with her husband and step-son. (R. at 279-300.) Although Keen's mood had fluctuated in the previous months, by September 2005, she began to feel better, and by October 10, 2005, she confirmed that she had been using her coping skills to manage her moods and had seen some improvement in her symptoms. (R. at 280-81.) She reported that her sleep disturbances had improved, she was able to discuss her family dynamics without tearfulness or fear and she neither reported nor exhibited any psychotic symptoms. (R. at 280.) A mental status evaluation revealed that she was calm and cooperative, her affect was appropriate and her thought processes and memory were intact. (R. at 280.) In November 2005, Keen reported continued use of coping skills to manage her moods despite what she reported as depression related to the holiday season. (R. at 279.) She reported that her sleep had improved, and she felt better able to concentrate. (R. at 279.)

Case 1:08-cv-00018-JPJ-PMS   Document 19   Filed 03/12/09   Page 6 of 17   Pageid#: 661

On August 28, 2006, Donna L. Havens, L.C.S.W., a licensed clinical social worker for The Counseling Center, reported that Keen's mood was depressed and anxious and that her memory, judgment and insight were intact. (R. at 410.) Keen reported that her mood was lifted significantly. (R. at 410.) On October 12, 2006, Havens reported that Keen had no hallucinations or delusions and that she was fully oriented. (R. at 409.) Havens reported that Keen's immediate memory was impaired and that her judgment and insight were minimally impaired. (R. at 409.) Havens completed a mental assessment indicating that Keen had a severely limited, but not precluded, ability to no useful ability to perform all work-related activities. (R. at 404-06.)

On January 20, 2006, L. Andrew Steward, Ph.D., a licensed clinical psychologist, evaluated Keen at the request of Keen's attorney. (R. at 377-85.) Steward reported that Keen's affect was blunted and that her mood was consistently anxious and dysphoric. (R. at 378.) Keen reported that she occasionally heard voices and would see people and things that were not there. (R. at 379.) Steward found no evidence of hallucinations, delusions or paranoia. (R. at 378.) He reported that all of Keen's mental and memory functions were depressed. (R. at 378.) The Wechsler Adult Intelligence Scale-Third Revision, ("WAIS-III"), test was administered, and Keen obtained a verbal IQ score of 76, a performance IQ score of 78 and a full-scale IQ score of 75. (R. at 381.) Steward diagnosed recurrent, severe major depressive disorder with psychotic features, generalized anxiety disorder, history of bipolar disorder, not otherwise specified, and borderline intellectual functioning. (R. at 383.) He indicated that Keen had a then-current Global Assessment of Functioning,

("GAF"),[5] score of 45.[6] (R. at 384.) He opined that Keen was permanently and totally disabled. (R. at 384.)

Steward completed a mental assessment indicating that Keen had mild limitations in her ability to remember locations and work-like procedures, to understand, remember and carry out short, simple instructions and to make simple work-related decisions. (R. at 374-76.) He indicated that Keen had moderate limitations in her ability to understand, remember and carry out detailed or complex instructions, to sustain an ordinary routine without special supervision, to interact appropriately with co-workers and to respond appropriately to changes in a routine work setting. (R. at 374-75.) Steward indicated that Keen had a severely limited, but not precluded, ability to maintain attention and concentration, to perform activities within a schedule, maintain regular attendance and be punctual, to work with or near others without being distracted by them, to complete a normal workday or work week, to perform at a consistent pace, to interact appropriately with the public, to interact appropriately with supervisors and to respond appropriately to work pressures in a normal work setting. (R. at 374-75.)

On September 29, 2006, Keen was admitted to Russell County Medical Center for increased depression with suicidal ideation and paranoia. (R. at 418-19.) Dr. Alfredo Cervantes, M.D., started Keen on additional medications, and Keen's

---

[5]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[6]A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

-8-

depression gradually cleared.  (R. at 418.) Dr. Cervantes reported that Keen tolerated her medications well without side effects.  (R. at 418.) Dr. Cervantes diagnosed bipolar disorder, most recent episode manic with psychotic features.  (R. at 419.) Dr. Cervantes indicated that Keen had a then-current GAF score of 65-70,[7] with her highest GAF score in the past year being in the 70s.[8] (R. at 419.)

On January 3, 2007, Dr. Timothy M. Fullagan, M.D., saw Keen for her complaints of low back pain and right leg pain.  (R. at 433-34.) A review of Keen's lumbar MRI revealed a disc herniation at the L3-L4 level and mild narrowing of the right foramen at the L4-L5 level.  (R. at 434.) Dr. Fullagan diagnosed probable right L4 radiculopathy.  (R. at 434.) Keen elected to proceed with surgery.  (R. at 434.) She underwent a hemilaminectomy and discectomy at the L3-L4 level on January 9, 2007.  (R. at 437-40.)

The record shows that in April 2007 and June 2007, Dr. David Beaird, M.D., treated Keen for a left ureteral injury.  (R. at 442-70.)

On June 26, 2007, Keen was seen at Appalachian Psychiatric Associates and reported that she was "doing pretty good."  (R. at 485.) In August 2007, it was reported that Keen was in good spirits.  (R. at 486.) She had no depression, mania or anxiety.  (R. at 486.)

---

[7]A GAF of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

[8]A GAF of 71-80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors ...; no more than slight impairment in social, occupational, or school functioning...." DSM-IV at 32.

## III. Analysis

The Commissioner uses an eight-step process in evaluating whether a claimant's DIB benefits should be terminated. *See* 20 C.F.R. § 404.1594(f) (2008). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has an impairment that meets or equals the requirements of a listed impairment; 3) has seen medical improvement in her previously disabling condition; 4) has seen an increase in her residual functional capacity; 5) an exception to the medical improvement applies; 6) has a severe impairment; 7) can return to her past relevant work; and 8) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1594(f). If the Commissioner finds conclusively that a claimant is disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1594(f).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2008); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated May 15, 2006, the ALJ found that Keen had been disabled

-10-

from January 2, 2004, through October 10, 2005, and had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 18-30.) The ALJ found that, as of October 11, 2005, Keen was no longer disabled. (R. at 25, 30.) The ALJ found that the medical evidence established that Keen suffered from severe impairments, namely degenerative disc disease, degenerative joint disease of the back and an affective disorder, but he found that Keen did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.) The ALJ found that, as of October 11, 2005, Keen had the residual functional capacity to perform a limited range of light work, which required no more than occasional crouching and stooping, frequent climbing, balancing, kneeling and crawling and that allowed for a moderate reduction in concentration. (R. at 28.) Therefore, the ALJ found that, beginning October 11, 2005, Keen was unable to perform any of her past relevant work. (R. at 29.) Based on Keen's age, education, work history and residual functional capacity as of October 11, 2005, and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Keen could perform, including jobs as a security guard, a maid and a housekeeper. (R. at 29.) Thus, the ALJ found that, as of October 11, 2005, Keen was not under a disability as defined under the Act and was not eligible for benefits. (R. at 30.) *See* 20 C.F.R. § 404.1520(g) (2008).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial

evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

In her brief, Keen argues that the ALJ erred by finding that she no longer had a severe mental impairment and by failing to give proper weight to the opinion of psychologist Steward. (Brief Of Plaintiff, ("Plaintiff's Brief"), at 7-13, 15-16.) Keen also argues that the ALJ erred by failing to give appropriate weight to her treating physician, Dr. Ascue. (Plaintiff's Brief at 13-14.)

As a preliminary matter, I note that the previous finding of Keen's disability does not impose a presumption of continuing disability. *See* 42 U.S.C.A. § 423(f) (West 2003 & Supp. 2008); *Crawford v. Sullivan,* 935 F.2d 655, 656-57 (4th Cir. 1991); *Rhoten v. Bowen,* 854 F.2d 667, 669 (4th Cir. 1988). Instead, the Commissioner must demonstrate that the termination of benefits was based on a consideration of all

-12-

the evidence in the record and a finding that the claimant was able to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f); *Crawford,* 935 F.2d at 656-57.

The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(d)(2) (2008). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

The ALJ determined that Keen's disability ceased as of October 11, 2005, because her bipolar disorder medically improved such that she was then able to perform unskilled, light work. Progress notes from The Counseling Center show that by October 10, 2005, Keen had minimal, if any, mental symptoms and was using her coping skills to manage her moods. (R. at 280.) Psychological findings from a mental status examination showed that Keen exhibited no evidence of psychotic symptoms, and she reported improvement in her symptoms, including her sleep disturbances. (R. at 280.) Subsequent progress notes from November 21, 2005, show that Keen continued to use her coping skills to manage her moods and continued to experience improved sleep and increased concentration. (R. at 279.) While Keen relies on the

-13-

April 19, 2005, opinion of Dr. Cervantes concerning her mental limitations, this evidence pertains to the time period for which the ALJ found that Keen was disabled. (R. at 257-59.) Keen contends that Dr. Cervantes's treatment notes submitted to the Appeals Council support this assessment. (Plaintiff's Brief at 11.) I disagree.

Based on my review of the evidence submitted to the Appeals Council, it appears that in August 2006, Keen reported that her mood was lifted significantly. (R. at 410.) In September 2006, Keen was admitted to Russell County Medical Center for suicidal ideation and paranoia, however, her depression gradually cleared with medication. (R. at 418-19.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Dr. Cervantes reported that Keen's then-current GAF score was 65-70, indicating that some mild symptoms or some difficulty in social, occupational or school functioning was present. (R. at 419.) He also reported that Keen's GAF score in the past year was in the 70s. (R. at 419.) By June 2007, Keen reported that she was "doing pretty good." (R. at 485.) In August 2007, Keen was in good spirits, and she had no depression, mania or anxiety. (R. at 486.) Based on this, I find that substantial evidence exists to support the ALJ's finding that, as of October 11, 2005, Keen's mental residual functional capacity had improved, and she was no longer disabled.

Keen argues that the ALJ failed to give proper weight to the opinion of psychologist Steward. (Plaintiff's Brief at 16.) Based on my review of the record, I find that substantial evidence exists to support the ALJ's decision not to give controlling weight to Steward. The ALJ noted that he gave no weight to the opinion of Steward because he was not a treating source, his report was internally inconsistent

-14-

with regard to observations, the treatment notes that he reviewed were almost two years old and he spent much of his psychological report commenting on physical problems, which he was not qualified to assess. (R. at 29.) The ALJ also found that Steward's diagnosis of borderline intellectual functioning and his assessment of "marked" functional limitations are inconsistent with Keen's ability to attend college and to complete a training program to become a respiratory therapist. (R. at 29.) It also is inconsistent with her 18-year history of employment as a respiratory therapist. Steward's opinion that Keen had "marked" limitations also is inconsistent with progress notes showing that Keen had intact memory and insight and, at most, only minimally impaired judgment. (R. at 279-300.) Based on this, I find that substantial evidence supports this weighing of the evidence.

Keen further argues that the ALJ erred by failing to give appropriate weight to the opinions of her treating physician, Dr. Ascue. (Plaintiff's Brief at 13-14.) On May 3, 2005, Dr. Ascue opined that Keen was limited to less than sedentary work.[9] (R. at 261-64.) As the ALJ indicated, there were no treatment notes to support Dr. Ascue's assessment, and there is no evidence in the record that Keen submitted such records before the ALJ issued his decision. (R. at 23.) Keen has submitted to this court new evidence consisting of progress notes from Judy Street, the nurse practitioner who treated her under Dr. Ascue's supervision. A review of Street's progress notes include no identification of a physical impairment, nor do they show objective medical findings of physical limitations that would support Dr. Ascue's opinion that Keen would be limited to less than sedentary work. (See Attachments to Plaintiff's Brief.)

---

[9]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *See* 20 C.F.R. § 404.1567(a) (2008).

-15-

Based on this, I find that the ALJ correctly determined that Dr. Ascue's opinion was entitled to little weight.

Based on the above, I find that substantial evidence exists to support the ALJ's finding that, as of October 11, 2005, Keen no longer was disabled.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.   Substantial evidence exists to support the ALJ's finding with regard to Keen's mental residual functional capacity;

2.   Substantial evidence exists to support the ALJ's finding with regard to Keen's physical residual functional capacity; and

3.   Substantial evidence exists to support the ALJ's finding that as of October 11, 2005, Keen was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits as of October 11, 2005.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A.

§ 636(b)(1)(c) (West 2006):

> Within ten days after being served with a copy [of this
> Report and Recommendation], any party may serve and file
> written objections to such proposed findings and
> recommendations as provided by rules of court. A judge of the
> court shall make a de novo determination of those portions of the
> report or specified proposed findings or recommendations to
> which objection is made. A judge of the court may accept, reject,
> or modify, in whole or in part, the findings or recommendations
> made by the magistrate judge. The judge may also receive further
> evidence or recommit the matter to the magistrate judge with
> instructions.

Failure to file timely written objections to these proposed findings and
recommendations within 10 days could waive appellate review. At the conclusion of
the 10-day period, the Clerk is directed to transmit the record in this matter to the
Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and
Recommendation to all counsel of record at this time.

DATED:     This 12th day of March 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE